# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:16-cv-00188-MR

| | |
|---|---|
| JEFFREY S. FINNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 19].

**I.  PROCEDURAL BACKGROUND**

The Plaintiff, Jeffrey S. Finney ("Plaintiff"), asserts that his history of acute cerebral infarction, obesity, and tobacco abuse constitute severe physical impairments under the Social Security Act (the "Act") rendering him disabled.  On May 9, 2013, the Plaintiff filed applications for disability insurance benefits under Title II of the Act and supplemental security benefits under Title XVI of the Act, alleging an onset date of January 23, 2013.

[Transcript ("T.") at 370, 376]. The Plaintiff's applications were denied initially and upon reconsideration. [T. at 253, 265, 273]. Upon Plaintiff's request, a hearing was held on March 2, 2015, before an Administrative Law Judge ("ALJ"). [Id. at 125]. Present at the hearing were the Plaintiff; Rebecca Lapkowski, Plaintiff's attorney; and a vocational expert ("VE"). [Id.]. On March 16, 2015, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [Id. at 232-42]. On April 30, 2015, the Plaintiff requested that the Appeals Council review the ALJ's decision. [Id. at 123]. The Appeals Council granted this request.[1] On June 23, 2015, the Appeals Council vacated the decision of the ALJ and remanded the case for further consideration. [Id. at 250-51]. On remand, the ALJ conducted another hearing, which occurred on December 23, 2015. [T. at 48]. Present at the hearing were the Plaintiff; Pamela Henry-Mays, the Plaintiff's attorney; and a VE. [Id.]. On March 2, 2016, the ALJ issued a second decision denying Plaintiff benefits. [T. at 25-41]. On July 20, 2016, the Appeals Council denied Plaintiff's request for review of this decision. [T. at 7-9]. On August 16, 2016, after having considered additional information that was submitted, the Appeals Council again denied Plaintiff's request for review of the

---

[1] The Court is unable to locate the document in the record reflecting the Appeals Council's grant of this request for review.

2

decision. [T. at 1-6]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute

3

[its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200,

1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's

ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c), 404.943(c), 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. <u>Id.</u> Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. <u>Id.</u>; <u>Hines v. Barnhart</u>, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. <u>Id.</u> Otherwise, the claimant is entitled to benefits. In this case, on remand, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged date of onset, January 23, 2013. [T. at 27]. At step two, the ALJ found that the Plaintiff has severe impairments including history of acute cerebral infarction, obesity, and tobacco abuse. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 28]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work[2] as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds; occasionally use ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; occasional exposure to workplace hazards, such as unprotected heights and dangerous machinery; occasionally push/pull with lower left extremity; frequent handling and fingering with left upper extremity; and sit/stand option alternating position approximately two times per hour without losing productivity.

---

[2] The Regulations define "light work," in pertinent part, as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds….

20 C.F.R. § 404.1597(b).

7

[Id. at 29].

At step four, the ALJ held that the demands of Plaintiff's past relevant work exceed his RFC and Plaintiff is, therefore, unable to perform any past relevant work. [Id. at 38]. At step five, based on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including order filler; clerk, general; and group sales representative. [Id. at 39]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from January 23, 2013, his alleged date of onset, through March 2, 2016, the date of the ALJ's second decision. [Id. at 40].

## V. DISCUSSION[3]

In this appeal, the Plaintiff sets out two assignments of error. First, the Plaintiff asserts that the ALJ erred in failing to provide a complete function-by-function analysis of Plaintiff's mental limitations in the broad areas of functioning in the RFC assessment. [Doc. 11 at 5]. Second, Plaintiff assigns error to the ALJ's failure to adequately explain the basis of her RFC, having ostensibly "relied on her own lay assessment of the medical data." [Id.]. The

---

[3] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

Plaintiff argues that these errors require remand. The Defendant, on the other hand, asserts that the ALJ's decision was supported by substantial evidence and reached through the application of correct legal standards. [Doc. 20 at 10].

### A. The Mental RFC Assessment.

With respect to the ALJ's mental RFC assessment, Plaintiff asserts two errors. First, Plaintiff argues the ALJ failed to account "for her own finding that [Plaintiff] has mild limitations in his ability to maintain concentration, persistence, or pace in the residual functional capacity." Second, Plaintiff contends the ALJ did not meet her requirement to consider "all of [Plaintiff's] impairments both severe and non-severe when determining his residual functional capacity." [Doc. 13 at 9-10]. Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the Regulations.[4] SSR 96-8p; see also, Mascio v. Colvin, 780 F.3d 632, 636

---

[4] The functions listed in the Regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by

9

(4th Cir. 2015) (remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted). Furthermore,

> [i]n assessing RFC, <u>the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe."</u> While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.

SSR 96-8p (emphasis added). Title 20, Section 416.945 of the Code of Federal Regulations also prescribes the ALJ's duty to consider the "total limiting effects" of an individual's impairments: "When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of subpart P of part 404 of this chapter, <u>we will consider the limiting effects of all of your impairment(s)</u>, <u>even those that are not severe</u>, in determining your residual functional capacity." 20 C.F.R. § 416.945(e) (emphasis added).

---

"impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

Here, the ALJ found that the Plaintiff has the severe impairments of history of acute infarction, obesity, and tobacco abuse. [T. at 27]. The ALJ determined that "claimant's medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore 'nonsevere' impairments." [T. at 28]. In making this finding, the ALJ considered the four broad functional areas set out in the Regulations for evaluating mental disorders known as the "paragraph B" criteria. [T. at 28]. These include (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. [Id.]. With respect to activities of daily living and social functioning, the ALJ found Plaintiff to have no limitations. Plaintiff also experienced no episodes of decompensation. Finally, in the area of concentration, persistence, or pace; the ALJ found Plaintiff to have "only mild limitation." [Id.]. Therefore, Plaintiff was found to have only a mild limitation in one of the four broad functional categories.

Because the ALJ found the Plaintiff to have both severe and nonsevere impairments, she was required to consider the limiting effects of all of the Plaintiff's impairments in assessing the Plaintiff's RFC. SSR 96-8p; 20 C.F.R. § 416.945(e). Plaintiff contends the ALJ failed to consider the limiting

effects of Plaintiff's nonsevere impairments of anxiety and depression in assessing Plaintiff's RFC. The Court disagrees. The ALJ's decision clearly evidences her consideration of the limiting effects of these impairments. First, the ALJ cited Plaintiff's own testimony that he (1) has never had any mental health treatment, therapy, or counseling; (2) takes care of his two children, ages 10 and 11, every other weekend; and (3) has no side effects from his medications, including hydrocodone. [T. at 31]. Second, in assessing the medical evidence of record, the ALJ recognized (1) Plaintiff was neurologically normal after his January 23, 2013 stroke, including having no focal neurological deficits and normal findings in sensory, motor, speech, and coordination testing; (2) a January 30, 2014 finding by Dr. Ahmad, Plaintiff's treating neurologist, in a Multiple Impairment Questionnaire that Plaintiff has anxiety, but is capable of tolerating moderate work stress; (3) a report by Dr. Munoz from a physical consultative examination that he performed on Plaintiff on March 22, 2014, in which Dr. Munoz notes that Plaintiff did not mention depression as one of his concerns to Dr. Munoz; (4) Plaintiff's own statement in a June 14, 2013 Report of Contact in which he states that he takes Xanax, an anti-anxiety medication, as needed and feels that it "helps enough with the little bit of depression he has right now;" and (5) findings by Dr. Witke, Plaintiff's treating physician, from Plaintiff's

February 24, 2014 new patient visit that Plaintiff's psychiatric examination was normal and that Plaintiff was stable on medications and had no side effects. [T. at 33-4]. As such, the record clearly shows that the ALJ considered the limiting effects of Plaintiff's nonsevere impairments of anxiety and depression. Therefore, this assignment of error is without merit.

This analysis by the ALJ also forecloses the Plaintiff's other assignment of error. The Plaintiff's only nonsevere mental impairment was anxiety and depression. This impairment was evaluated under the Paragraph B criteria, wherein the ALJ concluded that the Plaintiff had no functional limitations stemming from this nonsevere mental disorder, except for a mild limitation in concentration, persistence or pace. Thus, when the ALJ analyzed the effect of the Plaintiff's anxiety and depression, she considered the issue of the Plaintiff's concentration, persistence and pace. As this Court concluded in Williamson v. Colvin, No. 5:15-cv-70-GCM, 2016 WL 4992101 (W.D.N.C. Sept. 16, 2016), aff'd, Williamson v. Berryhill, 692 F. App'x 738 (4th Cir. 2017), where the ALJ cites specific evidence in the record that supports claimant's ability to work despite her moderate difficulties in concentration, persistence or pace, including specific facts about the claimant's activities of daily living and relevant medical testimony and evidence, this satisfies the requirements of Mascio. For this reason, the

Plaintiff's other assignment of error regarding the mental RFC assessment is also without merit.

### B.  The Physical RFC Assessment.

Next, Plaintiff argues the ALJ's failure "to explain adequately [ ] the basis for the RFC finding" requires reversal of the ALJ's decision. [Doc. 13 at 14]. Specifically, Plaintiff contends "the ALJ fails to provide the sufficient explanation required by SSR 96-8p regarding the conflict between the residual functional capacity provided, and the totality of the opinion evidence of record." [Id. at 18]. Plaintiff asserts that "the opinion evidence as a whole was consistent in assessing a greater degree of limitation than noted by the ALJ." [Id. at 14, 16].

In formulating an RFC the ALJ "may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p. These other sources include, but are not limited to, nurse practitioners, physician assistants, chiropractors, and physical therapists.  Id.; Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996). Information from "other sources" "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p.  As such, they

"are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p.

"Other sources" are not considered "acceptable medical sources" for purposes of the Regulations. 20 C.F.R. §§ 404.1513(a), (d). "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." SSR 06-03p. Under certain circumstances, the opinion of a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. Id. For instance, the opinion of a medical source that is not an "acceptable medical source" may be given more weight if he has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his opinions. Id. The ALJ

> generally should explain the weight given to opinions from these 'other sources,' <u>or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.</u> In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases…, if the determination is less than fully favorable.

SSR 06-03p (emphasis added).

To support his argument that the opinion evidence "as a whole" supports a "greater degree of limitation than noted by the ALJ," Plaintiff points to two putative discrepancies between the evidence of record and the RFC assessment. First, Plaintiff argues that "the ALJ's lay conclusion that [Plaintiff] could 'lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" is unsupported by the record. [Doc. 13 at 15]. This argument is without merit. The ALJ addresses the evidence related to Plaintiff's exertional limitations, including the lifting restrictions, as follows:

> The State Agency found that the claimant was capable of a range of work at the sedentary exertional level, but was incapable of pushing and pulling with the left lower or upper extremities more than occasionally; the State agency further found that a cane was necessary for ambulation[,] Exhibits 5A and 6A, although it was only sporadically noted throughout the record. <u>I find that the evidence as a whole supports a finding that the claimant is able to perform the lifting requirements of "light" work based upon physical therapy records indicating the claimant could lift 30 pounds with[in] a few months of his cerebrovascular accident. The claimant's ability to lift has not been tested by any other treating or examining physician</u>. Dr. Ahmad opined the claimant could frequently lift 5 pounds, and occasionally lift 20 pounds. Dr. Munoz found the claimant has normal muscle tone and bulk, and 5/5 strength on the right and 4-/5 strength on the left. He concluded the claimant was able to lift, carry, and handle "light" objects. Exhibit 10F, 11F, 17F. The state agency

16

> physicians did not examine the claimant, and was completed closer in time to the initial event and <u>[I] find the physical therapy notes and the physical consultative evaluation more persuasive in determining that the claimant has the ability to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds</u>. I have adopted the additional functional limitations by the state agency in the residual functional capacity statement.

[T. at 37-8 (emphasis added)]. The decision reflects that the ALJ based her findings regarding Plaintiff's lifting restrictions on the treatment records from Plaintiff's treating physical therapist. [Id.]. Plaintiff attended eight physical therapy sessions from April 3, 2013 to May 3, 2013, for balance training and body mechanics training. [T. at 31]. At an April 23, 2013 visit, Plaintiff was noted to be able to lift about 30 pounds. [T. at 31]. In accordance with Rule 06-03p, the ALJ explained why the opinion of a physical therapist should be given more weight than a medical source statement by a treating physician. Namely, the ALJ explained that the treatment provided by the physical therapist was rendered within several months of Plaintiff's stroke and that the physical therapist was the only medical care provider to have actually tested Plaintiff's ability to lift. Accordingly, the ALJ's finding that Plaintiff "has the ability lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" is supported by substantial evidence.

17

Second, Plaintiff describes particular findings in the record from Plaintiff's treating neurologist, Dr. Ahmad, in an attempt to demonstrate some sort of conflict between those findings and the RFC. [Doc. 13 at 16]. Plaintiff, however, does that which the ALJ is prohibited from doing: he cherrypicks evidence that supports the conclusion he wants to the exclusion of the evidence that refutes that conclusion. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (citation omitted). For example, Plaintiff states that when Plaintiff started treatment with Dr. Ahmad in January 2013, Dr. Ahmad noted Plaintiff "had a wide based, mildly ataxic gait and referred him to physical therapy for his gait." [Doc. 13 at 16 (citing T. at 500)]. This treatment note by Dr. Ahmad also states that Plaintiff's strength is "5/5 in all muscle groups," which Plaintiff fails to mention. [T. at 500]. Plaintiff continues, "[i]n November, 2013 Dr. Ahmad advised [Plaintiff] that he doubted that [Plaintiff] would have any further neurological improvement and that he has been left with left-sided hemisensory loss with neuropathic pain, ataxia, and some residual vertigo." [Doc. 13 at 16 (citing T. at 1050)]. Dr. Ahmad, however, also noted during this visit that Plaintiff's strength is "5/5 throughout with the exception of the

left lower extremity 5-/5." At this visit, Dr. Ahmad also characterized Plaintiff's ataxia as "mild." [T. at 1050]. Plaintiff failed to mention these facts.

As previously noted, this Court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through the application of the correct legal standard. Johnson, 434 F.3d at 653 (citations omitted). In reviewing for substantial evidence, this Court cannot undertake to reweigh conflicting evidence or substitute its judgment for that of the ALJ. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. (quoting Craig v. Charter. 76 F.3d 585, 589 (4th Cir. 1996)). The ALJ in this case discusses the conflicting evidence in the record and presents "such relevant evidence as a reasonable mind might accept as adequate" to support his finding on Plaintiff's lifting restriction. It is not within the province of this Court to reweigh that evidence or substitute its judgment for the ALJ's.

Furthermore, Plaintiff fails to point to any actual incongruity between the particular medical findings he cites in his brief and any restrictions in Plaintiff's RFC. Therefore, if there were any error by the ALJ, which there was not, it was harmless.

## VI. CONCLUSION

The decision of the Commissioner is supported by substantial evidence and is based on the application of the correct legal standards. Accordingly, the Commissioner's decision is affirmed.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **DENIED** and the Defendant's Motion for Summary Judgment [Doc. 19] is **GRANTED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **AFFIRMED** and this case is hereby **DISMISSED**. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 6, 2018

Martin Reidinger
United States District Judge